**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT
9            FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11
12    SENG PHOEUNG,
13                    Plaintiff,              No C 05-03345 VRW
14        v                                   ORDER
15    JO ANNE B BARNHART,
      Commissioner of Social Security,
16                    Defendant.
17    _____/
18
19
20
21         Plaintiff Seng Phoeung appeals from a decision of the
22    Social Security Administration denying benefits under Title XVI of
23    the Social Security Act.  The parties have filed cross motions for
24    summary judgment.  After careful review of the administrative
25    record, the court DENIES plaintiff's motion and GRANTS defendant's
26    motion.
27    //
28    //

I

A

Plaintiff was born on July 3, 1958 in Cambodia.  The administrative record contains inconsistent statements regarding plaintiff's level of education.  Plaintiff variously reported she "has never had any education," AR 120, had a sixth grade education, AR 87, and had a second or third grade education, AR 255.  In 1979, plaintiff married Sun Phon.  In 1982, the two immigrated to the United States.  After living for one year in New York and two in Texas, plaintiff and her husband settled in California.

The administrative record is also inconsistent as to plaintiff's facility with the English language.  On June 3, 2004, notes from a medical office visit indicated that plaintiff was "speaking English quite well." AR 25.  On August 11, 2004, a consultative medical examiner that reported plaintiff could speak "no English." AR 247.  On September 7, 2004, plaintiff filed a prehearing brief for the ALJ that reported plaintiff was "unable to speak English."  AR 118.  Plaintiff testified at her hearing on November 30, 2004, however, that she could read and speak a little bit of English.  AR 277.

Plaintiff has four children, now approximately ages eighteen to twenty-four.  At the time of the hearing, plaintiff's only source of household income was cash aid for her youngest child under the Aid To Families With Dependent Children (AFDC) program.  AR 274.  Plaintiff has never worked in the United States, AR 281, and has not looked for a job in the past several years, AR 282.  Plaintiff's husband worked for three years after coming to the United States but has not worked since coming to California in

2

United States District Court

For the Northern District of California

1985.  AR 255.  Plaintiff and her husband "constantly argue that the other one should get a job."  Id.

B

Plaintiff filed for supplemental security income (SSI) benefits on July 3, 2002.  AR 69.  In plaintiff's application for benefits, she claimed impairment due to high blood pressure, diabetes, tuberculosis, high cholesterol, back pain, depression, anxiety, insomnia and "heart and liver problems."  Id.  Plaintiff reported that her impairments began in June or July 1995.  Id.

On November 7, 2002, internal medicine specialist Dr Amit Rajguru administered a consultative medical examination.  Dr Rajguru noted no ataxia or dyspnea, AR 206, and that plaintiff had a full strength in all extremities, AR 208.  Plaintiff reported right shoulder and right leg pain, but Dr Rajguru found no evidence to support these claims.  AR 205.  Dr Rajguru concluded plaintiff had "no functional limitations."  AR 208.

On November 13, 2002, licensed psychologist Dr Carol Lewis-Wintrode administered, with the help of an interpreter, a consultative evaluation.  AR 211.  Plaintiff reported insomnia and memory and concentration problems.  AR 212.  After psychological testing, Dr Lewis-Wintrode found that plaintiff had a short attention span but plaintiff's memory was "grossly intact" and plaintiff could follow instructions and "complete the tasks with moderate effort."  AR 214.  Dr Lewis-Wintrode found no evidence of hyperdistractibility or hyperactivity.  Id.  Dr Lewis-Wintrode diagnosed plaintiff with probable borderline functioning but found plaintiff could handle "ordinary job stresses."  AR 215-16.

United States District Court

For the Northern District of California

On December 6, 2002, Dr Mona Afary conducted an intake interview of plaintiff.  AR 224, 264.  Plaintiff concedes that Dr Afary is only a therapist and not a licensed psychologist.  Pl Mot (Doc #13) n2.  In the interview, plaintiff reported nightmares and insomnia.  AR 224.  Dr Afary noted "illiteracy" and diagnosed plaintiff with posttraumatic stress disorder.  AR 226.  There is no indication Dr Afary performed any psychological tests.

On January 3, 2003, the Social Security Administration (SSA) determined that plaintiff was not disabled.  AR 56. Plaintiff filed a request for reconsideration on March 4, 2003.  AR 61.  The prior decision was affirmed on July 21, 2003.  AR 62.  On September 15, 2003, plaintiff requested a hearing before an administrative law judge (ALJ).  AR 67.

On May 14, 2003, plaintiff's therapist, Dr Mona Afary, reported that plaintiff complained of nightmares, insomnia and depression, was "not able to focus or concentrate" and had "a poor sense of orientation and memory."  AR 219, 220.  Dr Afary claimed that since plaintiff arrived in the United States, she had "not been able to work due to her emotional and psychological problems," AR 220, and had "not been able to make friends or acquaintances," AR 221.  In addition, Dr Afary asserted that plaintiff had "no education," could not follow "simple written or oral instructions" and was "not able to keep a job."  AR 222.  Dr Afary diagnosed posttraumatic stress and major depressive disorders.  Id.

On September 11, 2003, psychiatrist Dr James Gracer saw plaintiff.  AR 260, 265.  The majority of Dr Gracer's notes are illegible.  Even the legible portions often lack context because they are preceded by unintelligible symbols or words.

United States District Court

For the Northern District of California

On August 11, 2004, plaintiff underwent a second medical evaluation, this time with internal medicine specialist Dr Burton Brody, aided by an interpreter.  AR 247.  Plaintiff reported diabetes, high blood pressure, hypercholesterolemia, depression and "tendency to headaches and light headedness," and that she "fatigues easily" although "[n]o complaint of bone, joint or muscle pains."  Id.  Dr Brody found "[h]ypertension controlled," "[n]ormal range of motion in all joints,"  AR 248, and "no apparent limitations on a medical basis."  AR 249.

On August 24, 2004, plaintiff underwent a second consultative psychological exam administered by licensed psychologist Dr Cecilia Hardey.  AR 254.  An interpreter was present.  Id.  Dr Hardey noted that plaintiff "appeared to be projecting blame onto other people, rather than taking responsibility," "was tearful and pessimistic" and was "somewhat anxious" and "somewhat labile."  AR 254.  Dr Hardey noted several inconsistencies between plaintiff's statements and Dr Afary's report including plaintiff's length of disability and level of education.  AR 256.  Plaintiff scored five out of fifteen on the Rey Memory Test which "is <u>not</u> within normal limits and is considered to be indicative of malingering."  AR 257.  Plaintiff's performance on the Benton Visual Retention Test was "clearly indicative of malingering."  Id.  Dr Hardey did not find sufficient criteria to diagnose clinical depression or post traumatic stress disorder.  Id.  Dr Hardey concluded plaintiff had "the mental ability to perform simple rote tasks, and could probably perform even more complicated tasks with appropriate training."  AR 257-58.  Dr Hardey's report in the record is unsigned.

United States District Court

For the Northern District of California

On November 30, 2004, the ALJ held a hearing with plaintiff, plaintiff's attorney, a vocational expert and a Cambodian interpreter present.  AR 263.  Plaintiff's attorney expressed regret about not having received notice that Dr Hardey would be administering the psychological exam and stated that she "would have liked to have had the opportunity to obtain additional information from [plaintiff's] treating source."  AR 268. The ALJ asked, "how would sending her to Hardy have prevented you from doing that?"  Id.  Plaintiff's attorney stated she wished that SSA had offered to pay the Jewish Family and Children Services clinic for an assessment rather than Dr Hardey.  Id.

Plaintiff introduced a report on a different patient written by Dr Hardey that used similar language to plaintiff's report.  AR 265.  Plaintiff claimed that "Dr Hardey's conclusions are unreliable because they are based on a template or pattern that she uses for multiple claimants."  AR 126.  The ALJ entertained this argument at length.  AR 265.

Plaintiff's attorney conceded that plaintiff's "physical impairments would permit light work."  AR 267.  Plaintiff testified to having headaches, AR 279, pain, AR 282, insomnia, AR 282, trouble concentrating, AR 287, and shortness of breath, AR 287.

The vocational expert testified that the following jobs required only light exertion and minimal English and were present in significant numbers:  small product assembler, dining room attendant and sandwich maker. AR 288, 289.

A substantial volume of mostly illegible medical records were also introduced as exhibits.  A treatment note from September 17, 2002 reported that plaintiff had "no problems."  AR 187.  On

6

August 28, 2001, plaintiff reported she felt nervous but slept well.  AR 192.  A treatment note from August 14, 2001 indicated plaintiff was "nervous," "feeling sad" and sleeping well.  AR 195.

C

The ALJ issued a decision on February 23, 2005.  AR 16. In the decision, the ALJ noted plaintiff had "variously alleged that she has no education whatsoever, two or three years of education and six years of education," but found "six years of education based on her signed statement on her Disability Report." Id.  The ALJ also quoted plaintiff's statement to her physician she had "no problems" on September 17, 2002.

The ALJ then reviewed the medical evidence.  Dr Rajguru found that plaintiff had blood pressure "within normal limits" and had "normal reflexes and sensation" and plaintiff's allegations of right shoulder and leg pain were "without any objective findings." AR 16.  Similarly, the ALJ noted that Dr Brody's examination found "no limitation" and SSA review concluded there was "no severe impairment."  AR 16-17.  The ALJ gave these weight as "supported by objective medical evidence."  AR 17.

Next, the ALJ reviewed Dr Lewis-Wintrode's findings that plaintiff "was able to focus and complete tasks presented with moderate effort" and that plaintiff had "no significant work-related limitations."  AR 17.  Of the Hardey report, the ALJ stated that "the only diagnosis Dr Hardey was able to make was an Axis I diagnosis of probable malingering."  Id.

The ALJ found that Dr Afary's report and intake interview notes were not entitled to significant weight because of many

7

United States District Court

For the Northern District of California

discrepancies between Dr Afary's report and other evidence.  AR 17.
First, the ALJ noted that Dr Afary asserted that plaintiff was
disabled by her mental impairments for twenty-one years but
plaintiff only claimed to have had a mental impairment for two to
three years.  Id.  Second, Dr Afary claimed plaintiff was unable to
focus and had impaired memory but Dr Lewis-Wintrode found
plaintiff's memory intact and plaintiff able to focus.  Third, Dr
Afary alleged plaintiff was "not able to keep a job" although
plaintiff testified that she had not looked for work.  Fourth, Dr
Afary reported that plaintiff had no education while plaintiff
elsewhere reported a variety of educational levels.  Fifth, Dr
Afary stated that plaintiff was unable to follow simple
instructions, but Dr Lewis-Wintrode found plaintiff able to follow
simple instructions without difficulty.  Because of these
discrepancies, the ALJ gave "little weight to Dr Afary's opinion
and conclusions."  AR 17.

        The ALJ also found plaintiff's credibility to be poor
because plaintiff inconsistently reported her education and
facility with English and because plaintiff "clearly and
deliberately malingered" during Dr Hardey's exam.  AR 17.  In
addition, the ALJ noted that plaintiff may have made allegations of
disability for secondary gain because only one of plaintiff's
children was young enough to receive AFDC, AFDC was plaintiff's
only source of income and plaintiff complained there was "no money
for rent, no food in the house and no money coming in."  AR 17-18.

        In summary, the ALJ found that plaintiff "provided no
evidence showing any impairment that poses more than minimal
limitations upon her ability to perform simple, unskilled work

existing in significant numbers in the national economy." AR 18. Accordingly, the ALJ found that plaintiff did not have a "severe" impairment.  Id.

The Appeals Council denied plaintiff's request for review.  Having received a final decision, plaintiff timely filed her action seeking judicial review under 42 USC § 405(g).


## II

The Social Security Act provides supplemental income to individuals who have attained age 65 or are blind or disabled.  42 USC § 1381.  Plaintiff claims disability under Title XVI of the Social Security Act.  AR 69.

The SSA's regulations specify in detail how an ALJ must determine whether a claimant is disabled.  20 CFR § 416.920.  The regulations set forth a five-step sequential process for ALJs to use in evaluating claims of disability: (1) first, the ALJ considers whether the claimant is currently employed in substantial gainful activity; (2) if not, the second step asks whether the claimant has a severe impairment; (3) in step three, the ALJ determines whether the claimant has a condition which meets or equals any listed condition according to the criteria set forth in the Listings of Impairments in Appendix 1, Subpart P of Par 404; (4) if the claimant does not have such a condition, step four asks whether the claimant can perform her past relevant work; (5) if not, in step five the ALJ considers whether the claimant has the ability to perform other work which exists in substantial numbers in the national economy.  20 CFR § 416.960(c).

//

United States District Court

For the Northern District of California

1    After the SSA has made a final determination, the

2  applicant may request judicial review through a civil action filed

3  in the district court.  42 USC § 405(g).  On review, the district

4  court will overturn the SSA's decision only if it is not supported

5  by substantial evidence or is based on legal error.  <u>Moisa v</u>

6  <u>Barnhart</u>, 367 F3d 882, 885 (9th Cir 2004).  Substantial evidence

7  means such relevant evidence as a reasonable mind might accept as

8  adequate to support a conclusion.  <u>Young v Sullivan</u>, 911 F2d 180,

9  183 (9th Cir 1990).  While inferences from the record can

10 constitute substantial evidence, only those reasonably drawn from

11 the record will suffice.  <u>Widmark v Barnhart</u>, 454 F3d 1063, 1066

12 (9th Cir 2006).  If evidence is susceptible to more than one

13 rational interpretation, one of which supports the ALJ's decision,

14 the ALJ's conclusion must be upheld.  <u>Thomas v Barnhart</u>, 278 F3d

15 947, 954 (9th Cir 2002).

16    When reviewing medical evidence, the ALJ must evaluate

17 every medical opinion received.  20 CFR § 416.927(d).  Medical

18 opinions are statements from acceptable medical sources that

19 reflect judgments about the nature and severity of the claimant's

20 impairment(s).  20 CFR § 416.927(a)(2).  SSA distinguishes between

21 "medical sources" which include licensed physicians and

22 psychologists, 20 CFR § 416.913(a)(2), and "other sources" which

23 include nurse practitioners, physicians' assistants, naturopaths,

24 chiropractors, audiologists, and therapists, 20 CFR §

25 416.913(d)(1).  The ALJ may give opinions from "other sources" less

26 weight than opinions from acceptable medical sources.  <u>Gomez v</u>

27 <u>Chater</u>, 74 F3d 967, 970-71 (9th Cir 1997).

28 //

United States District Court

For the Northern District of California

### III

Plaintiff challenges the ALJ's decision on six grounds. The court finds each of plaintiff's arguments to be without merit.

### A

First, plaintiff argues that the ALJ failed to consider Dr Gracer's treatment note and that "a competent treating physician's opinion cannot be disregarded without comment." Doc #13. SSA rules require consideration of every medical opinion in the record. 20 CFR § 416.927(d). The ALJ, however, need not discuss every piece of evidence. <u>Howard ex rel Wolff v Barnhart</u>, 341 F3d 1006, 1012 (9th Cir 2003).

Dr Gracer's notes are largely illegible. AR 260. Legible portions such as "insomnia," "cries a lot" and "sleep - 4 hours only" are plaintiff's subjective complaints. Also legible are the words "dep'd affect, calm, alert, casual, friendly." The presenting problem of "PTSD" is clearly labeled. The individual words "lexapro," "traz," "dysthymia" and "Maj Dep" are also legible. The words or symbols adjacent to these terms are indecipherable.

Plaintiff contends that Dr Gracer's notes show he "noted Plaintiff's complaints of frequent crying and insomnia and, during a mental status exam, observed a depressed mood and affect." Doc #13. Contrary to plaintiff's characterization, there is no evidence Dr Gracer performed a mental status exam. Dr Gracer did write down plaintiff's subjective complaints. These subjective complaints, however, are cumulative to plaintiff's testimony and other evidence in the record. For example, Dr Gracer observed

11

United States District Court

For the Northern District of California

1   plaintiff had a "dep'd affect."  AR 260.  Dr Lewis-Wintrode

2   reported plaintiff "was remarkable for not smiling."  AR 211.

3         Plaintiff contends that "Dr Gracer diagnosed Major

4   Depression and Dysthymia."  Doc #13.  Careful examination by the

5   court reveals no intelligible diagnosis.  The words "dysthymia" and

6   "Maj Dep" are legible.  The preceding word or symbol is

7   indecipherable, possibly indicating the condition was diagnosed,

8   suspected or successfully treated.  Because of the lack of context,

9   the court finds no intelligible diagnosis.

10        Plaintiff argues these notes show Dr Gracer "prescribed

11  Lexapro and Trazodone."  It is unclear if the circled P means

12  plaintiff was already taking these prescriptions before the exam or

13  if Dr Gracer prescribed these medications as a result of the exam.

14  Without a context, no meaning is imputed to these isolated words.

15  Even if Dr Gracer's note did show a prescription for Lexapro and

16  Trazodone, this merely duplicates Dr Brody's evaluation which

17  indicated Lexapro and Trazodone were among plaintiff's current

18  medications.  AR 247.

19        As Dr Gracer's note is of little evidentiary value, the

20  ALJ was not required to address it in his decision.

21

22

23                              B

24        Plaintiff argues that the ALJ failed to evaluate Dr

25  Afary's report as a "medical opinion" under 20 CFR § 416.927(d)

26  which lists "factors in deciding the weight [given] to any medical

27  opinion."  Dr Afary's report was an "other source" not a "medical

28  opinion," because Dr Afary was not a licensed psychologist.  Doc

12

United States District Court

For the Northern District of California

#13 n2.  Accordingly, the ALJ need not use the 20 CFR § 416.927(d) factors in weighing Dr Afary's report.

Plaintiff further argues that the ALJ erred by assigning little weight to Dr Afary's report.  SSA rules allow the ALJ "to accord opinions from other sources less weight than opinions from acceptable medical sources."  Gomez v Chater, 74 F3d 967, 970-71 (9th Cir 1997).  Accordingly, the ALJ was allowed to give less weight to Dr Afary's report.

In addition, the lack of objective signs and medical findings justifies the ALJ's decision to give Dr Afary's report little weight.  "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 CFR § 416.927(d)(3).  Dr Afary asserted plaintiff had "a poor sense of orientation and memory."  Dr Afary apparently did not perform any objective memory tests such as those administered by Dr Lewis-Wintrode.  Because Dr Afary did not use objective psychological tests to support her statements, the ALJ was justified in giving Dr Afary's report little weight.

In addition, the inconsistencies between Dr Afary's report and other evidence in the record justify giving Dr Afary's report little weight.  The ALJ noted that "Dr Afary asserts that the claimant has been disabled by mental impairments for 21 years, but the claimant alleges that she has had a mental impairment for only 2 to 3 years."  AR 17.

Plaintiff argues that "[i]t is possible that [Dr Afary] believes that this Plaintiff has been suffering psychologically for many years and that the Plaintiff lacked insight or recognition of

United States District Court

For the Northern District of California

her suffering." Doc #13. The existence of an alternative interpretation of the evidence is not a sufficient reason to reverse a decision by the ALJ. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v Barnhart, 278 F3d 947, 954 (9th Cir 2002). Dr Afary's report states that "[d]uring her 21 years of living in the US, [plaintiff had] not been able to work due to her emotional and psychological problems." AR 220. A rational person could have interpreted this statement as factually inconsistent with plaintiff's claims.

The ALJ also identified inconsistencies with respect to plaintiff's inability to focus and impaired memory. Dr Afary stated that plaintiff was "unable to focus or concentrate" and had "poor sense of orientation and memory." AR 220. Dr Lewis-Wintrode's mental status examination revealed that plaintiff was "oriented in all dimensions" and "was able to focus on the tasks" and plaintiff's "immediate memory for daily events and remote memory for past events was grossly intact." AR 213-14. A rational person could find these statements to be factually inconsistent.

The ALJ also noted that Dr Afary asserted that plaintiff was "not able to keep a job," but plaintiff testified she had never worked in the United States. Plaintiff argues that this inconsistency is irrelevant because it is unrelated to Dr Afary's conclusion. Doc #13. Plaintiff cites no law in support of this proposition. Further, the ALJ reasonably questioned the credibility of the report, not its conclusion.

Plaintiff next argues that the ALJ was required by 20 CFR § 416.912(e) to recontact Dr Afary to gain insight into the

14

United States District Court

For the Northern District of California

inconsistencies in Dr Afary's report.  This rule, however, explicitly applies only to "evidence we receive from your treating physician or psychologist or other medical source."  Dr Afary is not a physician, psychologist or medical source, so 20 CFR § 416.912(e) does not apply.

In addition, the court notes a further inconsistency not identified by the ALJ.  Dr Afary asserted that plaintiff had "not been able to make friends or acquaintances in the two decades that she has lived in the US."  AR 221.  In a Daily Activities Questionnaire dated October 30, 2002, plaintiff listed two names as friends.  AR 104.  In addition, plaintiff testified "my friend comes to take me to their house and we go there and just hang out singing and eating."  AR 285.

The ALJ's decision to give little weight to Dr Afary's report is legally correct and factually reasonable because Dr Afary is an "other source," Dr Afary did not conduct psychological tests and Dr Afary's report contains multiple factual inconsistencies.

C

Plaintiff argues the ALJ erred in finding that plaintiff did not have a "severe" impairment in step two of the disability evaluation process.  Step two is a screening device to dispose of groundless claims.  Webb v Barnhart, 433 F3d 683, 687 (9th Cir 2005).  The court must determine whether substantial evidence in the record supports the conclusion that plaintiff did not have a medically severe impairment or combination of impairments.  Id.

Plaintiff points to the evidence from Dr Gracer and Dr Afary as establishing posttraumatic stress disorder and depression.

United States District Court

For the Northern District of California

As discussed above, Dr Afary's evidence was reasonably discounted by the ALJ and Dr Gracer's notes did not contain any intelligible diagnoses.  Dr Lewis-Wintrode noted that plaintiff "did indicate symptoms of depression," but did not diagnose depression or posttraumatic stress disorder.  AR 214.  Dr Hardey noted that there "did not appear to be sufficient evidence to meet the criteria for a diagnosis of clinical depression or post traumatic stress disorder."  AR 257.  Dr Lewis-Wintrode found that plaintiff "appears to have the ability to handle ordinary job stresses" and "can handle simple tasks."  AR 216.  The record is devoid of any objective evidence of any psychological impairments.

The record similarly lacks objective evidence of physical impairments.  Dr Brody reported "no apparent limitations on a medical basis."  AR 249.  Dr Rajguru concluded plaintiff had "no functional limitations" at the time of the exam.  AR 208.

Plaintiff contends "there is conflicting evidence of the severity of Plaintiff's impairments."  Doc #13.  In fact, there is no evidence of any significant physical or mental impairment.  Accordingly, the court finds substantial evidence in support of the ALJ's finding of no severe impairment at step two.

Plaintiff also argues that the ALJ failed to apply the special technique in evaluating the severity of mental impairments prescribed by 20 CFR § 416.920a.  Under the special technique, the ALJ will first "determine whether you have a medically determinable mental impairment."  20 CFR § 416.920a(b)(1).  If the ALJ finds a medically determinable impairment, the ALJ must "rate the degree of functional limitation resulting from impairments."  As noted above, there is no objective or medical opinion evidence of any mental

United States District Court

For the Northern District of California

impairment in the administrative record.  Without a medically determinable mental impairment, the ALJ need not rate the degree of functional limitation.

The ALJ's decision that plaintiff did not have a severe impairment was supported by substantial evidence.

D

Plaintiff argues that the ALJ's reasons for finding plaintiff's testimony not credible were insufficient.  The ALJ noted that plaintiff inconsistently reported her educational background.  AR 17.  Plaintiff argues that this inconsistency is "immaterial," citing no law or rule in support of this proposition. Plaintiff alternately attributes the inconsistency to "memory impairment."  But Dr Lewis-Wintrode found that plaintiff's "immediate memory for daily events and remote memory for past events was grossly intact."  AR 214.  The court does not find either of plaintiff's arguments convincing.

The ALJ also found that plaintiff had not been truthful about her facility with English.  AR 17.  Plaintiff argues the ALJ cites no evidence to support this.  Yet the record contains numerous inconsistent statements already noted in Part IA, supra. In addition, plaintiff reported on her Daily Activities Questionnaire of October 30, 2002 that she "can't read."  AR 101. Dr Lewis-Wintrode reports that plaintiff "is able to read in her native language."  AR 212.  Plaintiff testified at trial to be able to "read a little bit" of English.  AR 277.

Finally, plaintiff argues that the ALJ should not have relied on Dr Hardey's report suggesting deliberate malingering to

United States District Court

For the Northern District of California

support a finding of poor credibility.  Plaintiff contends that Dr Hardey's report was unreliable because it highlighted inconsistencies between Dr Afary's report and information obtained directly from plaintiff.  AR 125-26.  But closely reading source material, double-checking facts and reporting on inconsistencies makes a report more, rather than less, reliable.

Plaintiff also argues that Dr Hardey's report is based on a template.  In support, plaintiff submitted a redacted report from another patient.  Plaintiff appears to suggest that the template was not changed and that plaintiff's report contains information not from plaintiff's examination.  This argument was entertained by the ALJ at the hearing.  AR 265.  It is unlikely that quantitative test results would be present in a template.

In addition, it is highly unlikely that a result noted in numerous places in the report could be the result of failure to change a template.  The suggestion of malingering is present in multiple places in Dr Hardey's report:  plaintiff's score of five out of fifteen on the Rey Fifteen Item Memory Test was "not within normal limits" and "considered to be indicative of malingering," plaintiff's performance on the Benton Visual Retention Test "was clearly indicative of malingering," plaintiff "failed every item" which is "very unusual as even very severely impaired people usually can reproduce the first few (easiest) forms."  AR 257.  Dr Hardey gave a diagnosis of "probable malingering" and concluded that "applicant appeared to be malingering."  Id.  Plaintiff has, at best, circumstantial evidence for the claim that Dr Hardey uses a template to prepare reports.  The ALJ was entitled to include this report in the record.  Moreover, in practice, the ALJ found Dr

18

United States District Court

For the Northern District of California

Hardy's report of limited usefulness because Dr Hardey was unable to diagnose anything other than possible malingering.

Plaintiff argues that the ALJ "seems to have assumed that having a low income means that the Plaintiff has a financial incentive to lie."  Doc #13. Plaintiff is correct that a low income, by itself, is not a valid reason for finding a claimant to be not credible.

The ALJ, however, appears to identify "secondary gain" as a possible motive rather than an independent ground for finding poor credibility.  Notably, the ALJ speculated that plaintiff "may be making her allegations of disability for secondary gain."  AR 17.  In contrast, the ALJ stated definitively that plaintiff "has not been forthcoming" and "deliberately malingered."  Id.  The ALJ's use of conditional language with regard to "secondary gain" indicates this was a possible motive rather than an independent ground for finding plaintiff to have poor credibility.

In addition, the ALJ could have discounted plaintiff's testimony as inconsistent with objective medical evidence.  "[T]here must be medical signs and laboratory findings which show that you have a medical impairment."  20 CFR § 416.929(a).  As discussed in part IIIC supra, plaintiff has not produced any objective evidence of impairment.

The ALJ's decision to discount plaintiff's testimony was supported by substantial evidence.

E

Plaintiff argues the ALJ erred by failing to rule on plaintiff's objection to the admission of Dr Hardey's consultative

United States District Court

For the Northern District of California

psychological examination report.  Plaintiff cites 20 CFR §
416.1439, which relates to "the issues to be decided at the
hearing."  Because the content of the record is not an issue "to be
decided at the hearing," 20 CFR § 416.1439 does not apply.

Plaintiff's prehearing letter to the ALJ dated November
23, 2004 appears to be an objection under 20 CFR § 416.919j, which
states that "[y]ou or your representative may object to your being
examined by a medical source we have designated" and "[i]f there is
a good reason for the objection, we will schedule the examination
with another medical source."  Plaintiff's attorney testified that
she did receive notice a consultative exam would be scheduled but
"didn't realize that it would be with Dr Hardy."  AR 265.  If
plaintiff's representative wanted to know with whom the examination
was scheduled, she should have called to find out.  Objections
under 20 CFR § 416.919j must be made <u>before</u> the examination has
occurred.  Plaintiff's objection is not timely.

Even if the ALJ failed to rule on a motion plaintiff
made, the error was harmless.  When plaintiff argued at the hearing
that Dr Hardey's report was unreliable, the ALJ directly asked how
plaintiff's consultation with Hardey prevented her from obtaining
additional information.  AR 268.  Plaintiff failed to allege harm
either at the hearing or in her motion for summary judgment.


F

Plaintiff also argues that the ALJ improperly relied on
Dr Hardey's unsigned examination report.  The SSA "will not use an
unsigned or improperly signed consultative examination report" to
deny benefits.  20 CFR § 416.919o(b).

United States District Court

For the Northern District of California

The ALJ appears to have relied on Dr Hardey's report only insofar as its reports of malingering threw doubt on plaintiff's credibility.  Dr Hardey's report, moreover, was not the only ground for questioning plaintiff's credibility.  Defendant correctly notes that the ALJ did not rely on Dr Hardey's report at all in making plaintiff's disability determination because "the only diagnosis Dr Hardey was able to make was * * * probable malingering."  AR 17.  The ALJ did not rely on Dr Hardey's report in finding that plaintiff's disability was not severe.

The ALJ's reliance on Dr Hardey's unsigned report was, therefore, harmless error.

IV

The ALJ's decision was supported by substantial evidence.  The legal errors identified were minor and, moreover, harmless.  Accordingly, the clerk shall enter judgment in favor of defendant and against plaintiff.  The clerk shall close the file and terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge

21